ROBERT I. MARTIN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Martin v. Commissioner
Docket Nos. 511-69, 1901-69, 1915-69.
United States Tax Court
T.C. Memo 1972-245; 1972 Tax Ct. Memo LEXIS 12; 31 T.C.M. (CCH) 1219; T.C.M. (RIA) 72245; December 14, 1972, Filed William G. Wells, for the petitioners in docket Nos. 511-69 and 1915-69. Michael Korn, *13 for the petitioner in docket No. 1901-69. Jonathan A. Brod, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: In these consolidated cases the respondent determined the following Federal income tax deficiencies: Petitioners
Docket No.
Year
Deficiency
Robert I. Martin and G. Maxine Martin
511-69 and 1915-69 [2]
1965
$681.22
1966
487.50
Maxine D. Martin
1901-69
1963
1,213.38
1964
522.81
1965
610.64
1966
436.78
Certain concessions have been made by all of the parties and will be given effect in the Rule 50 computations. The issue presented in these cases is a familiar one: Were the payments by the husband, Robert I. Martin, to his former wife, Maxine D. Martin, alimony or part of a property settlement? If alimony, the payments are taxable to the former wife and deductible by the husband under the provisions of sections 71(a) and 215(a), Internal Revenue Code of 1954. [3]
*14 The facts in this case are fully stipulated. We adopt the stipulation and exhibits attached thereto as a part of our findings of fact. The pertinent facts are summarized below. Petitioners Robert I. Martin and G. Maxine Martin were husband and wife both at the time they filed their separate petitions in these proceedings and during the years 1965 and 1966. They resided in Reseda, California, when their petitions were filed. They filed joint Federal income tax returns for the taxable years 1965 and 1966 with the district director of internal revenue at Los Angeles, California. Petitioner Maxine D. Martin is the former wife of Robert I. Martin. At the time of filing her petition herein she resided in Encino, California. She filed her Federal income tax returns for the taxable years 1963 to 1966, inclusive, with the district director of internal revenue at Los Angeles, California. Hereafter we will refer to Robert I. Martin as "Robert" and to Maxine D. Martin as "Maxine." On November 8, 1967, Maxine signed a consent extending the statute of limitations to February 28, 1969, with respect to the assessment of her Federal income tax liabilities for the taxable year 1964. Robert *15 and Maxine were married on September 11, 1928. On January 1, 1963, they entered into an agreement entitled "Property Settlement Agreement." In summary it provided as follows: Under paragraph 3 and 4 of the "Property Settlement Agreement," each party retained his or her separate property. Under paragraph 8A of the "Property Settlement Agreement," dealing with the division of the community property of the parties, Robert agreed to: (a) Transfer to Maxine all of his right, title, and interest in the family residence, subject to an existing first mortgage, which as of December 21, 1962, had an approximate unpaid balance of $11,150; (b) Transfer to Maxine all of the furniture, silver and dishes, linens, household appliances, drapes, rugs, etc., located in the family residence; (c) Transfer to Maxine an undivided one-half interest in a parcel of real estate located on an island in the State of Washington; (d) Transfer to Maxine a 1961 automobile subject to the unpaid balance of the purchase price; (e) Transfer to Maxine a savings account totaling $2,434.17; (f) Transfer to Maxine a checking account totaling $450; (g) Maintain Maxine as beneficiary on a $15,000 and a $3,000 *16 life insurance policy on his life (she would pay the premiums from the date of the agreement); (h) Maintain Maxine as beneficiary of his group policy issued on his life through his employer; (i) Provide health insurance coverage of Maxine; and (j) Transfer to Maxine two cemetery plots. Under paragraph 8B of the "Property Settlement Agreement," also dealing with the division of the community property of the parties, it is provided: Husband hereby agrees to pay to the wife as a further consideration for the transfers made by her in any provision of this Agreement, and particularly pursuant to the provisions of this Paragraph 8, the sum of $500.00 per month during the remainder of the natural life of the said wife * * *. In addition to the foregoing, the husband agrees that he will pay to the wife an additional sum * * * as shall be sufficient to enable the wife to pay such income taxes to the United States or the State of California as may be due on account of the said payments to her of $500.00 a month. Under paragraph 8C of the "Property Settlement Agreement," also dealing with the division of the community property of the parties, Maxine agreed to: (a) Transfer to Robert *17 an undivided one-half interest in a parcel of real estate located on an island in the State of Washington; (b) Transfer to Robert 26 shares of common stock of Pacific Airmotive Corporation (the husband's employer); (c) Transfer to Robert a 1958 automobile; (d) Pay Robert $1,500 either when she sells the family residence or within two years from the date of execution of the "Property Settlement Agreement," (e) Pay department store bills totaling $525 and a dental bill of $90. Pursuant to the "Property Settlement Agreement," Maxine received more than 50 percent of the community property. Other relevant portions of the "Property Settlement Agreement" are as follows: 9. SUPPORT OF WIFE: It is mutually agreed that the payments provided for in the preceding paragraph of this Agreement represent a division of community property rights and not support of the wife, and the wife does hereby waive any and all right to support or maintenance from the husband. * * * 11. RELEASES OF RIGHTS: (a) Except as otherwise provided in this Agreement, each party to this Agreement does hereby release the other from any and all liabilities, debts or obligations, of every kind or character *18 * * * including all claims of either party upon the other for support and maintenance as wife or as husband * * *. * * * 13. AGREEMENT BINDING ON SUCCESSORS: Each and every covenant and agreement herein contained shall inure to the benefit of, and shall be binding upon the heirs, legatees, devisees, asignees, administrators, executors and successors in interest of the parties hereto. 14. * * * (b) If either party shall hereinafter institute a suit for divorce or separate maintenance against the other in any court of competent jurisdiction, this Agreement may be introduced in evidence, but in any case shall be considered as the final, binding agreement between the parties with respect to their property rights and any obligations for mutual support that may exist. On December 27, 1962, Maxine filed a complaint for divorce from Robert. Paragraph VII of the complaint stated: That the parties hereto have executed a written agreement whereby they have made a division of all community property and have made all necessary arrangements for the support and maintenance of the parties * * * On March 20, 1963, a default interlocutory decree of divorce was entered with respect *19 to the divorce of Robert and Maxine. The interlocutory decree approved the "Property Settlement Agreement." On March 23, 1964, a final judgment of divorce was rendered, binding the parties to all property settlement and alimony provisions made by the interlocutory decree of divorce. Pursuant to paragraph 8B of the "Property Settlement Agreement," the interlocutory decree of divorce (which approved paragraph 8B) and the final judgment of divorce (which made paragraph 8B binding on the parties), Robert made payments to Maxine in the following amounts: Year
Amount
1963
$6,000
1964
2,375
1965
3,150
1966
11,950
Robert claimed deductions on his Federal income tax returns because he thought the payments he made pursuant to the "Property Settlement Agreement" were periodic alimony payments under section 71(a)(1) of the Code. Maxine did not include in her reported gross income on her Federal income tax returns any of the payments made to her by Robert because she considered them to be property settlement payments. Respondent took inconsistent positions in his notices of deficiencies sent to the respective petitioners so that the revenue would be adequately protected. *20 As to Robert I. Martin and G. Maxine Martin, respondent determined that the periodic payments were not deductible by them under section 215 of the Code. As to Maxine D. Martin, respondent determined that the payments were income to her under section 71(a)(1). At the trial and in his briefs the respondent has shifted from a position of neutrality to one favoring petitioners Robert I. Martin and G. Maxine Martin, arguing that the payments were in the nature of alimony, and thus deductible by Robert and includable in Maxine's income. Section 71(a)(1) provides that periodic payments received by a divorced wife pursuant to a decree or a written instrument incident to a divorce are included in her gross income if such payments are imposed on her former husband because of "the marital or family relationship." [4]Section 215(a) provides that amounts includable by the former wife under section 71 are deductible by the husband. [5]
*21 Whether the payments at issue represent alimony or were in consideration of the former wife's interest in the community property is a question that must be determined in accordance with the facts and circumstances of each case. Ann Hairston Ryker, 33 T.C. 924, 929 (1960). The fact that payments are labeled as either property settlement payments or alimony payments is not controlling. Phinney v. Mauk, 411 F. 2d 1196, 1198 (C.A. 5, 1969); Bernatschke v. United States, 364 F.2d 400, 404 (Ct. Cl. 1966); Bardwell v. Commissioner, 318 F.2d 786, 789 (C.A. 10, 1963); Soltermann v. United States, 272 F.2d 387, 390 (C.A. 9, 1959). What we are searching for is the true intention of the parties. Here we must do so with only the "Property Settlement Agreement," the "Complaint for Divorce," and the interlocutory decree and final divorce decree before us. Cf. Riddell v. Guggenheim, 281 F.2d 836 (C.A. 9, 1960). In determining the true intent of the parties in such situations, the courts have applied several criteria: (1) Are the payments related to the husband's income? If so, this indicates that the payments were *22 meant to be in the nature of alimony payments. (2) Are the payments to end upon the death of the husband or the remarriage of the wife? This too indicates that the payments were alimony or support payments since contingencies are suggestive of alimony. See generally section 1.71-1(d), Income Tax Regs.
(3) Are the payments to continue for the lifetime of the wife? This indicates that the payments were property settlement payments. (4) Did the wife, aside from the payments, receive her share of any community property? If she did, this suggests that the payments were intended to discharge the husband's marital obligation, and were not made as consideration for property. (5) Is there provision for the payment by the husband of any taxes assessed against the wife as a consequence of the payments? Such a provision is highly indicative of an alimony or support agreement. (6) Are there any other provisions suggesting that the agreement was meant to dispose of the wife's claim for alimony? Such provisions point to the conclusion that the agreement was for payments in the nature of alimony. Unfortunately there is no mechanical method of applying these criteria. The case law having *23 evolved as far as it has, we cannot at this point simply say: "The caption of the agreement governs; if the parties label it a property settlement agreement, so be it." Instead, we must exercise our best judgment as to the applicability of all of the criteria mentioned above. In our opinion the payments in question were more in the nature of alimony or support than property settlement. While there are several indications to the contrary, the weight of the evidence favors this conclusion. The payments were to end with the husband's death. [6] Maxine received more than 50 percent of the community property. The agreement provided that Robert would assume any tax liability that might arise on account of the payments. In addition, an objective reading of other provisions of the agreement lends support to our conclusion. For example, paragraph 11(a) states: Except as otherwise provided in this Agreement, each party to this Agreement does hereby release the other from any and all liabilities, * * * including all claims of either party upon the other for support and maintenance as wife or as husband * * *. [Emphasis added.] Paragraph 14(b) states: [This] Agreement * * * shall be *24 considered as the final, binding agreement between the parties with respect to their property rights and any obligations for mutual support that may exist. Accordingly, we hold that these payments were intended to serve as alimony and should be taxed as such. Section 71(a) is applicable. It follows that Robert is entitled to deduct the payments under section 215(a). We add this additional thought: If the parties had wanted to make sure that the payments would be taxed as property settlement payments, *25 they could have achieved this result by wording the agreement in a more unequivocal fashion. It is apparent, instead, that they chose to "muddy the waters." To reflect the concessions of the parties and the conclusions reached herein, Decisions will be entered under Rule 50. Footnotes
1. Consolidated herewith for trial, briefing and opinion are Maxine D. Martin, docket No. 1901-69, and G. Maxine Martin, docket No. 1915-69.↩
2. Only one statutory notice of deficiency for the years 1965 and 1966 was sent to Robert I. Martin and G. Maxine Martin, but each filed a separate petition with this Court covering both years.↩
3. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
4. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of divorce or separate maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. ↩
5. Section 215(a) provides as follows: (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682↩, the amount thereof is not includible in the husband's gross income.
6. Maxine, the former wife, points out on reply brief that the final decree adopts the provisions of the interlocutory decree relating to the spouses' property and that said provisions call for an end to the payments upon the death of the former husband, rather than upon the death of the former wife - as in the agreement. We agree that this is so; however, the fact as pointed out represents a contingency, and contingencies are indicative of support payments. Ann Hairston Ryker, 33 T.C. 924, 930↩ (1960) ("[The] provision for ceesation of payments in the event of petitioner's marriage or the death of either party added contingencies that are characteristic of alimony.")